UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JARED ANDERSON,
      Petitioner,

vs.                          Case No.:  3:19cv1654/LAC/EMT

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS,
      Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner Jared Anderson (Anderson) filed a habeas petition under 28 U.S.C. § 2254 (ECF No. 1).  Respondent (the State) filed an answer (ECF No. 24) and relevant portions of the state court record (ECF No. 26).  The court provided Anderson an opportunity to file a reply (*see* ECF Nos. 25, 28), but he has not filed one.

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues presented by the parties, it is the opinion of the undersigned that Anderson is not entitled to federal habeas relief.

I.    BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* ECF No. 26).[1]  Anderson was charged in the Circuit Court for Escambia County, Florida, Case No. 2015-CF-1236, with one count of fleeing or attempting to elude a law enforcement officer in an agency vehicle with siren and lights activated at high speed (Count 1) and one count of misdemeanor resisting an officer without violence (Count 2) (Ex. B1 at 3).  Anderson waived his right to a jury trial (*see* Ex. B2 at 195–204).  Following a non-jury trial on July 30, 2015, Anderson was found guilty as charged on both counts (Ex. B4 (trial transcript)).  On September 11, 2015, the trial court sentenced Anderson as a habitual felony offender to ten years in prison on Count 1, and a concurrent term of one year in jail on Count 2, with 173 days of pre-sentence credit (Ex. B2 at 268–97 (sentencing transcript), 322–29 (judgment)).  Anderson, through counsel, appealed the judgment and sentence to the Florida First District Court of Appeal ("First DCA"), Case No. 1D15-4867, (*see* Ex. B3 at 382 (notice of appeal), Ex. B3 at 389 (order appointing appellate counsel), Ex. B7 (initial brief)).    The First DCA affirmed the judgment and sentence on June 6, 2017, but remanded for the trial court

---

[1] Citations to the state court record refer to the exhibits submitted by the State (ECF No. 26).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

to enter a written order of competency nunc pro tunc (Ex. B9). *Anderson v. State*, 219 So. 3d 1000 (Fla. 1st DCA 2017) (Mem). The mandate issued June 22, 2017 (Ex. B10).

On March 20, 2018, Anderson filed a motion for post-conviction relief in the state circuit court, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. C1 at 8–22). The circuit court summarily denied the Rule 3.850 motion in an order rendered on April 4, 2018 (*id.* at 23–26). Anderson appealed the decision to the First DCA, Case No. 1D18-2177 (*see* Ex. C1 at 62–63 (notice of appeal)). The First DCA affirmed the circuit court's decision per curiam without written opinion on January 22, 2019 (Ex. C2). *Anderson v. State*, 263 So. 3d 4 (Fla. 1st DCA 2019) (Table). The mandate issued February 19, 2019 (Ex. C3).

Anderson filed his § 2254 petition on June 4, 2019 (ECF No. 1).

## II.    STANDARD OF REVIEW

A federal court "shall not" grant a habeas corpus petition on any claim that was adjudicated on the merits in state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court". 28 U.S.C. § 2254(d)(1). The United

States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[2]  Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003).  After identifying the governing legal principle, the federal court determines whether the state court's adjudication is contrary to the clearly established Supreme Court case law.  The adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases.  *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding

---

[2] Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

If the "contrary to" clause is not satisfied, the federal court determines whether the state court "unreasonably applied" the governing legal principle set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record before the state court.  *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004).  "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011).  As with the "unreasonable application" clause, the federal court applies an objective test.  *See Miller-El v. Cockrell*, 537

U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). AEDPA also requires federal courts to "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Landrigan*, 550 U.S. at 473–74 (quoting 28 U.S.C. § 2254(e)(1)).

The Supreme Court has often emphasized that a state prisoner's burden under § 2254(d) is "difficult to meet, . . . because it was meant to be." *Richter*, 562 U.S. at 102. The Court elaborated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L. Ed. 2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n.5, 99 S. Ct. 2781, 61 L. Ed. 2d 560

(1979) (Stevens, J., concurring in judgment).  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 562 U.S. at 102–03 (emphasis added).

A federal court may conduct an independent review of the merits of a petitioner's claim only if it first finds that the petitioner satisfied § 2254(d).  *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007).  Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

III.    ANDERSON'S CLAIMS

**A.    Ground One:  "The Court should reverse Petitioner's convictions due to court depriving him of his right to represent himself during his competency hearing."**

Anderson alleges he made repeated, unequivocal requests to represent himself (ECF No. 1 at 9).  He alleges after a *Faretta* hearing, the trial court denied his right to represent himself even though he wished to do so (*id.*).  Anderson alleges the court ordered a competency evaluation and then "committed a manifest injustice during this procedure—ultimately denying Petitioner due process, equal protection and a

fair trial." (*id.*).  Anderson states he presented Ground One on direct appeal of his conviction (*id.*).

The State asserts that to the extent Anderson argues that the trial court violated his federal constitutional rights by denying his request to represent himself during the competency hearing, the claim appears to be exhausted (*see* ECF No. 24 at 7). The State contends Anderson is not entitled to federal habeas relief, because the state court's adjudication of this claim was reasonable (*id*. at 22–26).

### 1.    Clearly Established Federal Law

"The Sixth and Fourteenth Amendments of [the] Constitution guarantee that a person brought to trial in any state or federal court must be afforded the right to the assistance of counsel before he can be validly convicted and punished by imprisonment." *Faretta v. California*, 422 U.S. 806, 807 (1975); *see also Iowa v. Tovar*, 541 U.S. 77, 80–81 (2004).  However, the Sixth Amendment also includes the right to self representation.  *Faretta*, 422 U.S. at 831–32, 836.  In order to represent himself, the defendant must "knowingly and intelligently" waive his right to counsel.  *Id.* at 835.  The Supreme Court has held that, "[a]lthough a defendant need not himself have the skill and experience of a lawyer in order [to] competently and intelligently to choose self representation, he should be made aware of the dangers and disadvantages of self representation, so that the record will establish

that he knows what he is doing and his choice is made with eyes open." *Id.* at 835 (internal quotation marks and citation omitted); *see also Patterson v. Illinois*, 487 U.S. 285, 298 (1988). The Supreme Court has not "prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel." *Faretta*, 487 U.S. at 298. The "core inquiry is whether the defendant understood the choices before him" and the risks of self representation. *Jones v. Walker*, 540 F.3d 1277, 1293 (11th Cir. 2008).

Also relevant to Ground One is the clearly established federal law governing the constitutional prohibition against trying or convicting a defendant who is mentally incompetent. The Supreme Court set the standard to be used in determining mental competency as whether a defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam); *Drope v. Missouri*, 420 U.S. 162, 171 (1975); *see also Indiana v. Edwards*, 554 U.S. 164 (2008). Florida courts follow this standard. *See Hernandez–Alberto v. State*, 126 So. 3d 193, 209 (Fla. 2013) (citing *Dusky*, 362 U.S. at 402; *Drope*, 420 U.S. at 171).

When objective facts known to the state trial court are sufficient to raise a "bona fide doubt" as to the defendant's competency, the trial court must hold a

competency hearing. *Pate v. Robinson*, 383 U.S. 375 (1966); *see also Medina v. Singletary*, 59 F.3d 1095, 1106 (11th Cir. 1995); *James v. Singletary*, 957 F.2d 1562, 1571 (11th Cir. 1992). Although there are "no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed," "evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant." *Drope*, 420 U.S. at 180.

The standard of competency for standing trial is the same as the standard of competency for waiving the right to counsel. *See Godinez v. Moran*, 509 U.S. 389, 397 (1993).

### 2. Federal Review of State Court Decision

The state court record shows that at Anderson's initial appearance on the charges in this case, on March 24, 2015, Assistant Public Defender Marshawn Griffin, who had been appointed as Anderson's stand-by counsel in another pending case, notified the court that, based upon his observations and "limited communication" with Anderson, he believed that Anderson's competency was at issue (Ex. B1 at 9–12). The trial court inquired if Anderson had completed a form to determine if he qualified for appointment of the public defender (*id.* at 16). Anderson responded that he was representing himself, and "Me and God going to

handle this." (*id.*).  The court started to address Anderson, but Anderson interrupted,

"G-O-D." (*id.*).  The court again attempted to speak, and Anderson interrupted, "The

big man." (*id.* at 16–17).  Attorney Griffin interjected that even though Anderson

had rejected the services of the public defender, he felt compelled to alert the court

to the potential competency issue (*id.* at 17).  Attorney Griffin explained:

> Your Honor, just to apprise the Court as a friend of the Court, I
> have actually—this is the first time I've ever spoken with him—Mr.
> Anderson.  I was present in the courtroom when he was arraigned [in
> the other case] and I would just—it's not so much the content of the
> conversation.  It's the observable behavior in court.  I would have
> concerns, like I said, if he were my client as to his ability to manifest
> appropriate behavior.

> And as a side effect [sic], especially given the fact of some of the
> comments that have been made, I honestly would have questions as to
> whether or not he can adequately assist in his defense.  I don't foresee
> him being a very good historian.  But . . . if I were representing him,
> that would be my concern.

(Ex. B1 at 19).

The court then inquired of Anderson:

> THE COURT:  Mr. Anderson, is it still your intent to represent
> yourself?

> THE DEFENDANT:  Oh, yes, ma'am, me and God.

(Ex. B1 at 19–20).

The court proceeded to conduct a *Faretta* inquiry (Ex. B1 at 20–36). The court explained the advantages of representation by counsel and the dangers and disadvantages of proceeding without counsel (*id.* at 21–26). Anderson indicated he understood the court's explanations (*id.*). The court explained the charges Anderson faced and the maximum penalties he could receive (*id.* at 26–32). The prosecutor informed the court that Anderson may qualify for a sentence enhancement as a repeat offender (*id.* at 27–28). The court inquired of Anderson if he understood what they were discussing:

> THE COURT: This is one of those examples where we're using legal jargon and you may not know what PRR stands for. So it has to be very clear. This tends to happen. Legal jargon gets used. Do you understand that?
>
> THE DEFENDANT: Yep. It's basically like I'm on my last stand and I am a crook on the last stand.
>
> THE COURT: Well, what—
>
> THE DEFENDANT: So we're going to face it.
>
> THE COURT: What PRR stands for is prison release [sic] reoffender.
>
> THE DEFENDANT: Basically what it is; you're trying to give me everything in the book.
>
> THE COURT: Okay.

Case No.: 3:19cv1654/LAC/EMT

THE DEFENDANT:  Crook on the last stand.  I'm on my last stand.

THE COURT:  Okay.

THE DEFENDANT:  So y'all get ready and I'm ready.

THE COURT:  All right.

(Ex. B1 at 28).

Attorney Griffin interjected that he believed that the *Faretta* inquiry was pointless, because he believed Anderson needed a competency evaluation (Ex. B1 at 28–29).  The court responded that she would continue the *Faretta* inquiry as it was enabling her to observe and assess Anderson (*id.* at 29).

The court continued with the *Faretta* inquiry and asked Anderson if he understood the possible penalties he was facing (Ex. B1 at 30).  Anderson responded, "Oh, yes, ma'am. . . . Five years, ten years, life.  It don't matter. . . . Y'all ain't going to get me." (*id.* at 31).

The court then asked Anderson about his age, education, and mental and physical health (Ex. B1 at 32–47).  Anderson responded appropriately to the court's questions, stating that he was thirty-one years old, born on March 7, 1984, able to read, write, and understand English, had completed eleven years of school, was not under the influence of drugs or alcohol, had never been diagnosed or treated for

mental illness, and had no physical disabilities (*id.* at 32–33).  The court's inquiry

continued:

> THE COURT:  Having been advised of your right to counsel, the advantages of having counsel, the disadvantages and dangers of proceeding without counsel, the nature and charges, and the possible consequences in the event of a conviction, are you certain that you do not want me to appoint a lawyer to defend you?

> THE DEFENDANT:  Yes, ma'am.

> THE COURT:  If I allow you to represent yourself and if you request it, I could have the assistant public defender act as standby counsel.  Now, he's already been appointed to be standby in your old case, the burglary case, but we also have this new case that we're talking about.

> THE DEFENDANT:  Oh, you can put him on standby counsel on that, too, if you want to.  It don't matter.

> THE COURT:  Okay.  Would you like him on both of them?

> THE DEFENDANT:  Yeah.

> THE COURT:  Okay.  And he or she—it will be he.  It will be Mr. Griffin—would be available to you if you have any questions in the course of the proceedings.  You would like that?

> THE DEFENDANT:  Yes, ma'am.

> THE COURT:  Okay.  I will appoint the standby counsel to assist you in both cases.  However, you will still be responsible for the organization and content of presenting your case.  You still have the entire responsibility for your own defense.  Do you understand that?

> THE DEFENDANT:  Yes, ma'am.

THE COURT:  I'd like to talk about a few things now that I've gone through the entire inquiry.  Earlier before we called you up here, it was clear to me that you were—well, what was clear to me was I heard—I heard you get a little loud and I heard you use some profanity. You were speaking with your standby counsel at the time, Mr. Griffin.

THE DEFENDANT:  Yes, ma'am.

THE COURT:  I stopped the proceeding and at that time I said, "If you're going to have language like that, you're going to be removed."

THE DEFENDANT:  Yes, ma'am.

THE COURT:  At which time you stopped.

THE DEFENDANT:  Yes, ma'am.

THE COURT:  I have not seen or heard any other disruptions.  I also would note for the record that you do not seem to have a problem answering my questions.   There is some concern that I have regarding—when we were talking about the prison releasee reoffender, the PRR, and—

THE DEFENDANT:  Yes, ma'am.

THE COURT:  —you said, "They're just trying to put me away for life and give the most.  This is my last day, my last chance."  But I'm not sure that rises to a level of concern about your competency. You also seem to be maintaining yourself well right now—

THE DEFENDANT:  Yes, ma'am.

THE COURT:  —and answering questions appropriately.  I have to have a reasonable belief, is my understanding, as to whether or not you are competent to proceed.  But I am also—I—I'm just putting this

all on the record and telling you what I'm thinking in my head, because I am—I do think we might be right on that line and, certainly, Mr. Griffin is concerned. He has a duty to let me know if he's concerned. I will ask the State if they have seen anything that concerns them that I've failed to put on the record.

(Ex. B1 at 35–37).

The prosecutor stated she was concerned about Anderson's behavior when he was answering the court's questions, specifically, that he shook his head and was swaying back and forth "as if there was some other conversation going on in his head." (Ex. B1 at 38). The prosecutor stated that Anderson's affect seemed inappropriate at times, for example, he "was grinning and had this kind of odd smiling, very proud seeming." (*id.*). The prosecutor summarized that she was concerned with the combination of Anderson's affect, "disconnect," and physical behavior (*id.*).

The court asked for Attorney Griffin's input (Ex. B1 at 38). Attorney Griffin stated he believed that Anderson "hit some issues" with at least three of the six competency criteria, based on Anderson's affect, his behavior at counsel's table, and his "out of place" comments (Ex. B1 at 38–39). Attorney Griffin stated that Anderson was acting completely different than he acted at his arraignment in his other case (*id.* at 39).

Anderson responded to the attorneys' comments:

THE DEFENDANT:  Just what I wanted to say is if that's the case, if somebody get mad about a person smiling, you smiling at me. I can't smile?  I can't smile?  Let's put that on the record that we all was in here smiling.  Let's put these things on the record.

MR. GRIFFIN:  Mr. Anderson—

THE DEFENDANT:  I respect everybody in here.  You don't like the way I look at you?  You don't like the way I look at you?  That's your fault.  You suck it up.  You take it in.  I don't like the way a lot of people look at me, but I don't say nothing to them about it.  I keep things real.

MR. GRIFFIN:  Mr. Anderson.  Mr. Anderson.  Mr. Anderson, just calm down.  Just lower your—speak at an even—

THE DEFENDANT:  Yes, sir.

MR. GRIFFIN:  Are you all right now?

THE DEFENDANT:  Yes, sir.  I'm sorry.  It's just—it's just—it's just the thing about it that—

MR. GRIFFIN:  Jared—

THE DEFENDANT:  —everybody's trying to put me like I'm the bad man.

MR. GRIFFIN:  Jared.  Jared.  Jared, I want you to look at me for a second.  Jared.

THE DEFENDANT:  We all doing these things.

MR. GRIFFIN:  Jared, nobody's saying that you're a bad person. Okay?  Do you understand that?

THE DEFENDANT:  Yes, ma'am.

MR.    GRIFFIN:        Nobody's    called    you—nobody's (indiscernible).

THE DEFENDANT:  No.  I just—I just want the judge get my point on things—

MR. GRIFFIN:  You're right.  You are perfectly—

THE DEFENDANT:  —that we're all in here smiling.

MR. GRIFFIN:  Listen—listen—

THE DEFENDANT:  We're all up here in here looking at one another.

MR. GRIFFIN:  Mr. Anderson, you are perfectly entitled to your opinion —

THE DEFENDANT:  I know.  But let's put it on the record.  We're going to put everything on the record.

MR. GRIFFIN:  Okay.  Mr. Anderson.

THE DEFENDANT:  Everybody wants things on the record.  We're going to put it on the record.

MR. GRIFFIN:  Okay,  Mr. Anderson.

THE DEFENDANT:  We all in here smiling.

MR. GRIFFIN:  You're exactly right.

THE DEFENDANT:  Yeah.

MR. GRIFFIN:  Okay.  All right.

THE COURT:  And that is exactly—

THE DEFENDANT:  Even the officers in here doing it.

THE COURT:  And that's exactly why I wanted you to get your voice on the record, also—

THE DEFENDANT:  Yes, ma'am.

THE COURT:  —making sure that you got to be heard with that as well.

THE DEFENDANT:  Because like I say, Ms. Kinsey, if that's the case, if I would've been like this, why you smiling at me?  I don't like that you smiling.  But if that's the way how you depend to carry yourself, that's you.  I can't be mad the way how you want to present yourself.

MR. GRIFFIN:  Jared.  Jared.  Jared—

THE DEFENDANT:  If you want to smile at me, if you want to laugh, I can't get mad at you.

THE COURT:  Okay.  I understand totally.  Here's—

MR. GRIFFIN:  Jared, nobody's—

THE DEFENDANT:  If you did anything—if you doing anything to harm me in any kind of way, you're going to have to give account to God for it.

MR. GRIFFIN:  Jared.

THE DEFENDANT:  And that goes for anybody inside this room.  Anything that they feel like I did wrong to them, I have to give account to God for it.

MR. GRIFFIN: Mr. Anderson, nobody's made [sic] at you. Do you understand?

THE DEFENDANT: So we're going to go on and let this thing go on and play out how you want to play it.

THE COURT: That's exactly what we're going to do. We're going to let—we're going to go on to the next step. You ready to go on to the next step?

THE DEFENDANT: Yes, ma'am. Yes, ma'am.

THE COURT: I just wanted to make sure that you had the opportunity to be heard, too. Okay?

THE DEFENDANT: Yes, ma'am.

THE COURT: All right. So everybody got to put their say on the record.

THE DEFENDANT: Yes, ma'am.

THE COURT: What I'm going to do is—Mr. Anderson, I have to make a decision—

THE DEFENDANT: Yes, ma'am.

THE COURT: —right now as to what the next step is.

THE DEFENDANT: Yes, ma'am.

THE COURT: That's why I wanted to make really sure that you had the opportunity to be heard just then.

THE DEFENDANT: Yes, ma'am.

Case No.: 3:19cv1654/LAC/EMT

THE COURT:  And I do remember you from arraignment court, because I believe I was the one who did the colloquy with you the first time; right?  I did the Faretta Hearing with you the first time.

THE DEFENDANT:  Yes, ma'am.

THE COURT:  So what I need to do is—and I told you I went through all the things that I noticed that you were doing appropriately, that when you got upset before, you calmed down when I asked you to calm down.

THE DEFENDANT:  Yes, ma'am.

THE COURT:  The flip side to that is, your—your standby counsel has had to calm you down just a little bit here.  You have a right to get angry.

THE DEFENDANT:  Yes, ma'am.

THE COURT:  I don't want you to think that you don't have a right to get angry.  So you have a right to be heard.  And that's why I wanted you to be heard.

THE DEFENDANT:  Yes, ma'am.

THE COURT:  But what I want to make sure is that before we go on to-the next step, that a doctor signs off and says, "Absolutely, you can move on to the next step."  Okay?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  So what I'm going to do is I am going to appoint a doctor to just come talk to you and we'll cross all our Ts and dot all our Is.  How about that?

THE DEFENDANT:  Yes, ma'am.

> THE COURT: Okay. So at this point, based on that, Mr. Griffin, I'd like for you to step in and represent him on bond for the new law [sic].
>
> MR. GRIFFIN: All right.
>
> THE COURT: Because we still have to deal with that for Case No. 15-1236 [the case at issue in this federal habeas case].
> . . . .
> So at this point in this case I am going to appoint the public defender on 15-1236 based on the hearing and the observations of the Court today.

(Ex. B1 at 39–46). The court reiterated that Attorney Griffin was appointed as primary counsel on both of Anderson's cases until the competency evaluation was completed (*id.* at 47).

Anderson's arraignment was set for April 17, 2015. Prior to that date, counsel filed a not guilty plea. On April 17, 2015, the case was set for docket day on July 14, 2015, and for trial on July 27, 2015 (Ex. B5 at 408–10 (transcript)).

On May 22, 2015, the court held a hearing upon receiving the competency evaluation (Ex. B5 at 411–37 (transcript)). At that time, Attorney Griffin was still appointed to represent Anderson, so he appeared on Anderson's behalf (*see id.*). The hearing proceeded as follows:

> THE COURT: Mr. Griffin, what's your pleasure. Are they both your cases?

MR. GRIFFIN:  Yes, Your Honor.  Your Honor, at this time the defense will call Mr. Anderson to the stand—sorry.  If we could address Mr. Anderson's competency issue.

THE COURT:  Hi, Mr. Anderson.  Come on up.

MR. GRIFFIN:   Your Honor, Mr. Anderson, we had him evaluated based on a motion—defense's motion to the Court for competency.  That evaluation has since come back as Mr. Anderson is competent to proceed.  Based on that and my communications with him although I may not understand the way he was behaving, I don't have concerns that he is no longer incompetent [sic].

What I would point out to the Court, however, is during the pendency of this case, Mr. Anderson filed several motions while defense—we were appointed as standby counsel.

THE COURT:  Uh-huh.

MR. GRIFFIN:  And Mr. Anderson has filed several motions of—either in both this case and, I think, his other case.  I think the concern is—is that they were all basically considered, I think, a nullity, essentially, while he was represented.

THE DEFENDANT:  Pro se—they were all—yeah, a nullity.

THE COURT:  Okay.  Then let's do this.  Let's take it one step at a time.

Good afternoon, Mr. Anderson.

State, have you had the opportunity to review Dr. Joseph's [sic] report?

MS. LONERGAN:  I have.

THE COURT:  Any objection to me taking that as evidence?

      MS. LONERGAN:  No.

      THE COURT:  Mr. Griffin, any objection to me taking it as evidence?

      MR. GRIFFIN:  No, Your Honor.

      THE COURT:  I am going to—I have read the report of Dr. Josephs and based on his report, Mr. Anderson, I am going to find you competent to proceed.  Mr. Griffin has told us that there's some—and I will do an order—make a note.  Mr. Griffin has told me there were some motions that were filed, but because of that, we're in limbo.  So I believe I did appoint Mr. Griffin to step in until then.

      What we probably need to do is does—do you, Mr. Griffin, and you, Mr. Anderson—do either of you have any objection to me reviewing those motions and getting them set for hearings?
. . . .

      Mr. Anderson, now that—now that I have ruled that you are competent to proceed, the question is, do you want Mr. Griffin to continue to represent you or would you like to represent yourself, that you had expressed earlier?

      THE DEFENDANT:  I continue to like to represent myself.

(Ex. B5 at 412–14).  The court then conducted a thorough *Faretta* inquiry, at the conclusion of which the court found that Anderson was competent to waive counsel and that his waiver was knowing and intelligent (*id.* at 415–28).  The court asked Anderson if he wanted standby counsel, and Anderson responded no (*id.* at 428).

As Issue I of Anderson's initial brief on direct appeal, Anderson argued that the trial court deprived him of his constitutional right to represent himself during the

competency hearing (Ex. B7 at 7–10).  Anderson argued that by allowing counsel, who was appointed against his (Anderson's) will, to stipulate to the admission of the competency evaluation into evidence, the trial court violated Anderson's Sixth and Fourteenth Amendment right to represent himself.  Anderson argued that at the beginning of the competency hearing, the court asked the State and the assistant public defender whether they had any objection to admitting the competency report as evidence, and they both stated they did not.  Anderson argued that this stipulation allowed the court to make a competency finding without the calling of witnesses. Anderson argued that the court never asked him if he objected to admission of the competency report, and the court's failure to do so deprived him of his right to represent himself.

As Issue II of Anderson's initial brief, he argued that the trial court erred by failing to enter a written order adjudicating him competent to proceed (*see* Ex. B7 at 11–12).  Anderson presented this issue as Ground Two of his § 2254 petition, and it will be discussed *infra*.

The First DCA adjudicated Anderson's claims as follows:

> Appellant raises two issues on appeal.  We find only one issue has merit; we agree with appellant that the trial court erred when it failed to enter a written order adjudicating appellant competent to proceed before allowing appellant to represent himself in a bench trial. Therefore, we AFFIRM appellant's judgment and sentence, but

REMAND for the trial court to enter a written order of competency nunc pro tunc. <u>Mullens v. State</u>, 197 So. 3d 16, 37 (Fla. 2016).

(Ex. B9).  The trial court issued an order, nunc pro tunc to May 22, 2015 (the date of the competency hearing), finding Anderson competent to proceed (Ex. C1 at 53). The court also issued an order, nunc pro tunc to July 30, 2015 (the date of the bench trial) finding Anderson competent to represent himself in the bench trial (Ex. B11).

Where, as here, the state court disposes of an issue in a summary fashion, the state court's decision is still entitled to AEDPA deference.  *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002) (holding that "the summary nature of a state court's decision does not lessen the deference that it is due."); *see also Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state law procedural principles to the contrary.").  Where a state court denies relief without providing an explanation or its reasoning, the habeas petitioner must show that there was no reasonable basis for the state court's decision.  *See Richter*, 562 U.S. at 98.  The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could

disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  *See Richter*, 562 U.S. at 102.

Anderson does not take issue with the trial court's ordering a competency evaluation based upon its observations of Anderson's demeanor, behavior, and statements during the hearing on March 24, 2015.  Because the record supports the trial court's bona fide doubt as to Anderson's competency to stand trial, the trial court denied Anderson's request to represent himself at that time and appointed Attorney Griffin to represent Anderson until the competency issue was resolved. This was entirely in keeping with federal constitutional requirements, because Anderson could not waive his right to counsel unless he was determined to be competent to proceed.  *See Godinez*, 509 U.S. at 397 (the standard of competency for waiving the right to counsel is the same as the competency standard for standing trial).

Anderson faults the trial court for addressing only Attorney Griffin (Anderson's appointed counsel) regarding evidentiary issues at the competency hearing, prior to making its competency determination.  Anderson argues that the trial court should have asked him personally if he objected to the admission of Dr. Josephs' report and if he wished to call any witnesses.  The First DCA's rejection of this claim could have been based upon the theory that the trial court properly

determined Anderson's competency to proceed **before** it determined that he competently and intelligently chose self representation.  To do as Anderson suggests would have put the cart before the horse.  Fairminded jurists could agree that the First DCA's rejection of Anderson's claim is consistent with the clearly established federal law governing the constitutional prohibition against trying a defendant who is mentally incompetent and the law governing a defendant's constitutional right to self representation.

Anderson has not demonstrated that the First DCA's adjudication of Ground One was contrary to or an unreasonable application of clearly established federal law.  Therefore, he is not entitled to federal habeas relief on Ground One.

### B.    Ground Two:  "The trial court erred when it failed to enter a written order/complete competency proceeding properly."

Anderson alleges the trial court failed to "properly and procedurally follow the Federal guidelines" when determining his competency (ECF No. 1 at 11). Anderson alleges the trial court failed to enter a written order and appoint a doctor for the defense, and then ultimately determined his competency "nunc pro tunc" in violation of federal law (*id.*).  Anderson states he presented Ground Two on direct appeal of his conviction (*id.*).

The State contends Anderson's federal claim is unexhausted (ECF No. 24 at 11). The State contends Anderson presented a **similar** claim on direct appeal of his conviction, but he presented only a state law claim and did not present any federal basis for his claim in state court (*id.*). The State contends Anderson is now procedurally barred from returning to state court to present a federal constitutional claim; therefore, the claim is procedurally barred from federal review (*id.* at 11–12). The State alternatively argues Ground Two is without merit (*id.* at 26–29).

Before seeking federal habeas relief under § 2254, the petitioner must exhaust all available state court remedies for challenging his conviction, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971) (citation omitted)). "To satisfy the exhaustion requirement, the petitioner must have fairly presented the substance of his federal claim to the state courts." *Picard*, 404 U.S. at 277–78.

A petitioner "fairly" presents the substance of his federal claim when he describes the claim "such that [the state courts] are permitted the 'opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim.'" *Kelley v. Sec'y Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004) (quoting *Picard*, 404 U.S. at 277); *French v. Warden, Wilcox State Prison*, 790 F.3d 1259, 1270–71

(11th Cir. 2015) (reaffirming that a habeas petitioner must "present his claims to the state court 'such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation.'") (quoting *Kelley*, 377 F.3d at 1344–45).  Courts apply "fair presentation" principles "with common sense and in light of the purpose underlying the exhaustion requirement—namely, giving the state courts 'a meaningful opportunity' to address the federal claim." *Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342, 1351 (11th Cir. 2012) (quoting *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005)).

"[A] petitioner with a claim that could arise under either state or federal law must clearly indicate to the state courts that he intends to bring a federal claim." *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 458 (11th Cir. 2015).  A petitioner does so, for example, by "including in his claim before the state appellate court the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Lucas*, 682 F.3d at 1351 (quoting *Baldwin v. Reese*, 541 U.S. 27, 32 (2004)); *see also Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) (concluding that petitioner's federal claims were "fairly presented" when he provided enough information about the claims (and citations to Supreme Court cases) to notify the state court that the challenges were being made on both state and federal grounds).

A petitioner does not satisfy the exhaustion requirement "merely by presenting the state court with 'all the facts necessary to support the claim,' or by making a 'somewhat similar state-law claim.'"  *Lucas*, 682 F.3d at 1352 (quoting *Kelley*, 377 F.3d at 1343–44).  Similarly, "a petitioner cannot 'scatter some makeshift needles in the haystack of the state court record.  The ground relied upon must be presented face-up and squarely; the federal question must be plainly defined. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick.'"  *French*, 790 F.3d at 1271 (quoting *Kelley*, 377 F.3d at 1345).

As Issue II of Anderson's initial brief on direct appeal of his conviction, he argued that the trial court erred when it failed to enter a written order adjudging him competent to proceed (Ex. B7 at 11–12).  Anderson argued that Rule 3.212(b) of the Florida Rules of Criminal Procedure required the court to enter a written order stating its finding that Anderson was competent proceed (*id.*).  Anderson argued that the First DCA should remand the case for the trial court to enter a written order establishing that he was competent to proceed (*id.*).  The First DCA affirmed Anderson's convictions and sentences but remanded for the trial court to enter a written order of competency nunc pro tunc (Ex. B9).

In arguing to the First DCA that the trial court erred by failing to enter a written order stating its competency finding, Anderson pointed only to Florida law

(*see* Ex. B7 at 11–12).  Neither his claim nor the argument section of his initial brief cited to any federal case or federal constitutional provisions; indeed, Anderson did not even mention the word "federal" or refer to federal law in any other way. Anderson framed his claim in terms of state law, and he argued only state law. Nothing in Anderson's brief put the First DCA on notice that the issue was being presented as a federal constitutional claim.  Therefore, Anderson's claim of trial court error with respect to its failure to issue a written order of competency was not fairly presented to the state court as a federal constitutional claim and is thus unexhausted and procedurally defaulted.

A claim that was not exhausted in state court and which no longer can be litigated under state procedural rules is considered procedurally defaulted, *i.e.,* procedurally barred from federal review.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 839–40, 848 (1999); *Chambers v. Thompson*, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (holding that federal habeas courts should enforce applicable state procedural bars even as to claims that were never presented to the state courts).  A petitioner seeking to overcome a procedural default must show cause for the default and prejudice resulting therefrom, or that newly discovered evidence shows that he is actually innocent of the crime.  *See Murray v. Carrier*, 477 U.S. 478, 485–86, 496 (1986) (citations omitted).

Anderson has not shown cause for his procedural default of a federal challenge to the court's failure to enter a competency order, nor has he shown he is entitled to federal review of his claim through any other recognized exception to the procedural bar. Therefore, he is not entitled to federal habeas relief on Ground Two.

### C.    Ground Three:  "I[neffective] A[ssistance] of C[ounsel] by failing to object when court failed to follow Rule 3.210(2)(b), violating the 6th and 14th U.S. Constitutional rights [sic] and Florida's as well."

Anderson alleges he was examined by only one "state" doctor and never examined by a "doctor for the defense" or a disinterested, independent expert (ECF No. 1 at 13). Anderson alleges defense counsel failed to ensure that the "Federal guidelines" were correctly followed and that Anderson was "procedurally fit for trial" (*id.*). Anderson states he presented Ground Three in his Rule 3.850 motion and post-conviction appeal (*id.* at 13–15).

The State acknowledges that Ground Three appears to be exhausted (ECF No. 24 at 12). The State contends Anderson has not established that the state courts' adjudication of his claim was contrary to or an unreasonable application of clearly established federal law, or that it rested upon an unreasonable determination of the facts (*id.* at 29–32).

### 1.    Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To obtain relief under *Strickland*, the petitioner must show (1) deficient performance by counsel, and (2) the petitioner suffered prejudice as a result. *Id.* at 687–88. If the petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697.

The focus of inquiry under the performance prong of *Strickland* is whether counsel's assistance was "reasonable considering all the circumstances," and reasonableness is measured "under prevailing professional norms." *Strickland*, 466 U.S. at 688. "The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)). "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ." *Michael v. Crosby*, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting *Chandler*, 218 F.3d at 1317). Counsel's performance is deficient

only if it is "outside the wide range of professional competence." *Jones*, 436 F.3d at 1293 (citing *Strickland*, 466 U.S. at 690); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").

As to the prejudice prong of the *Strickland* standard, the petitioner's burden of demonstrating prejudice is high. *See Wellington v. Moore*, 314 F.3d 1256, 1260 (11th Cir. 2002). To establish prejudice, the petitioner must show "that every fair-minded jurist would conclude 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Jones v. GDCP Warden*, 753 F.3d 1171, 1184 (11th Cir. 2014) (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome," not that counsel's conduct more likely than not altered the outcome of the proceeding. *Id.* (citation omitted). And the petitioner must show that the likelihood of a different result is substantial, not just conceivable. *Williamson v. Fla. Dep't of Corr.*, 805 F.3d 1009, 1016 (11th Cir. 2015) (citing *Richter*, 562 U.S. at 112).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice

components are mixed questions of law and fact. *Strickland*, 466 U.S. at 698; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999). "Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 131 S. Ct. at 788. As the *Richter* Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* (citations omitted).

## 2.    Review of State Court Decision

Anderson presented Ground Three to the state circuit court as Ground One of his Rule 3.850 motion (Ex. C1 at 10–13). The state court adjudicated Anderson's claim as follows:

<u>Ground One</u>

> The requirement that the Court appoint at least two experts was eliminated from [R]ule 3.210 effective January 1, 2010. <u>See</u> <u>In re Amendments to the Florida Rules of Criminal Procedure</u>, 26, So. 3d

534 (Fla. 2009). Therefore, the Defendant's claim that his counsel
"ineffective" [sic] for failing to object to the Court appointing less than
two experts is without merit as a matter of law. <u>See</u> <u>Tita v. State</u>, 42
So. 3d 838 (Fla. 4th DCA 2020 ("nothing in the statutes or rules
requires a court to appoint a specific number of experts to evaluate a
defendant's mental competency."); <u>see also</u>, <u>Drope v. Missouri</u>, 420
U.S. 162, 173 (1975).

(Ex. C1 at 24). The First DCA affirmed the circuit court's decision without stating

its reasons for doing so (Ex. C2).

The First DCA's summary affirmance is an "adjudication on the merits" of

Anderson's claim, and is reviewed under § 2254(d)'s deferential standard. *See*

*Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court

and the state court has denied relief, it may be presumed that the state court

adjudicated the claim on the merits in the absence of any indication or state-law

procedural principles to the contrary); *id*. at 100 ("This Court now holds and

reconfirms that § 2254(d) does not require a state court to give reasons before its

decision can be deemed to have been 'adjudicated on the merits.'"). Because the

First DCA's decision was unaccompanied by an explanation, this court looks

through the unexplained decision to the state circuit court's reasoned order and

presumes that the First DCA adopted the same reasoning. *See Wilson v. Sellers*, 138

S. Ct. 1188, 1192 (2018).

Although an ineffective assistance of counsel claim is a federal constitutional claim which the court considers in light of the clearly established law of *Strickland*, when "the validity of the claim that [counsel] failed to assert is clearly a question of state law, . . . we must defer to the state's construction of its own law." *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984)[3] (explaining, in the context of an ineffective assistance of appellate counsel claim, that "[o]n the one hand, the issue of ineffective assistance—even when based on the failure of counsel to raise a state law claim—is one of constitutional dimension," but, "[o]n the other hand, the validity of the claim [counsel] failed to assert is clearly a question of state law, and we must defer to the state's construction of its own law.") (citations omitted); *see also Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) (holding that defense counsel cannot be deemed ineffective for failing to make a state law based objection when the state court has already concluded that the objection would have been overruled under state law; to conclude otherwise would require the federal habeas court to make a determination that the state court misinterpreted state law, which would violate the fundamental principle that federal habeas courts should not second guess state courts on matters of state law); *Herring v. Sec'y Dep't of Corr.*, 397 F.3d

---

[3] *Alvord* was superseded by statute on other grounds as noted in *Hargrove v. Solomon*, 227 F. App'x 806 (11th Cir. 2007).

1338, 135–55 (11th Cir. 2005) (denying federal habeas relief on ineffective assistance claim based on counsel's failure to make state law based objection; holding that the Florida Supreme Court's conclusion that the proposed objection would have been overruled was binding and precluded federal habeas relief on the ineffective assistance claim: "The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done . . . . It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second guess them on such matters.'") (alterations in original) (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)).

Here, as in *Alvord*, *Callahan*, and *Herring*, the state court has already answered the question of whether defense counsel had a meritorious basis to object to the trial court's failure to appoint more than one expert to evaluate Anderson's competency—counsel did not have a meritorious basis for objection.  The federal court must defer to the state court's determination of state law.  Because the objection that Anderson faults counsel for not making had no arguable basis for success, the state court could have reasonably rejected Anderson's ineffective assistance of counsel claim on the performance prong, the prejudice prong, or both.

Anderson has not demonstrated that the state court's adjudication of Ground Three was contrary to or an unreasonable application of *Strickland*. Therefore, he is not entitled to federal habeas relief on Ground Three.

**D.     Ground Four:  "I[neffective] A[ssistance] of C[ounsel] by failing to question expert as to competency of Petitioner to proceed (Rule 3.210) violating the 6th and 14th Amendment rights of U.S. Constitution."**

Anderson alleges his "stand in" counsel failed to examine or question the expert who evaluated Anderson's competency (Dr. Josephs) (ECF No. 1 at 15). Anderson alleges he was incompetent to proceed and still remains so (*id.*).  Anderson claims that the State and defense counsel allowed the trial court to proceed, and allowed Anderson to represent himself at a bench trial, without a proper competency determination (*id.*).  Anderson states he presented Ground Four in his Rule 3.850 motion and post-conviction appeal (*id.* at 16–17).

The State acknowledges that Ground Four appears to be exhausted (ECF No. 24 at 12–13).  The State contends Anderson has not established that the state courts' adjudication of his claim was contrary to or an unreasonable application of clearly established federal law, or that it rested upon an unreasonable determination of the facts (*id.* at 32–34).

### 1.     Clearly Established Federal Law

The *Strickland* standard, set forth *supra*, governs this claim.

Case No.:  3:19cv1654/LAC/EMT

## 2.   Review of State Court Decision

Anderson presented this claim to the state circuit court as Ground Two of his Rule 3.850 motion (Ex. C1 at 14–20).  The state court adjudicated Anderson's claim as follows:

### Ground Two

The Defendant further contends that his pre-trial counsel was ineffective for failing to question the expert witness.  The Defendant's counsel was not deficient for allowing the Court to decide the Defendant's competency based on the expert's written report.  Attachment 6, at 3.  "The parties may stipulate to deciding competency based on the written expert reports rather than live expert testimony[.]"  Rumph v. State, 217 So. 3d 1092, 1095 (Fla. 5th DCA 2017); see also Fowler v. State, 255 So. 2d 513, 515 (Fla. 1971).

On May 22, 2015, the Defendant's pre-trial counsel indicated to the Court that based on the expert's report and his [counsel's] communications with the Defendant, he no longer had concerns as to the Defendant's competency.[FN 1]   Attachment 6, at 2.  Because the record shows that Mr. Griffin no longer had concerns as to the Defendant's competency, it was reasonable to allow the Court to decide the Defendant's competency based on the expert's written opinion.  Mr. Griffin was not deficient for doing so.   "[T]he Federal Constitution imposes one general requirement:   that counsel make objectively reasonable choices."   Roe v. Flores-Ortega, 528 U.S. 470, 479 (2000).

[FN 1:  The language utilized by counsel was less than artful, but the meaning is apparent.]

(Ex. C1 at 25).  The First DCA affirmed the circuit court's decision without stating its reasons for doing so (Ex. C2).

As discussed, *supra* in Ground Three, the federal habeas court must defer to the state court's determinations on matters of state law, including the state court's determination that Florida law permits parties to stipulate to a trial court's deciding competency based on written expert reports rather than live expert testimony. Considering this, and Anderson's failure to show that Dr. Josephs' live testimony would have adduced any information on the competency issue that was not included in his written report, the state court reasonably concluded that Anderson failed to show that Attorney Griffin performed deficiently by stipulating to admission of Dr. Josephs' written report and not questioning him in person at the competency hearing.

 Anderson had not demonstrated that the state court's adjudication of Ground Four was based upon an unreasonable factual determination, or that it was contrary to or an unreasonable application of *Strickland*. Therefore, Anderson is not entitled to federal habeas relief on Ground Four.

IV.    CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice

of appeal must still be filed, even if the court issues a certificate of appealability.  28 U.S.C. § 2254 Rule 11(b).

"Section 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'"  *Miller-El*, 537 U.S. at 336 (quoting § 2253(c)(2)).  "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'"  *Buck v. Davis*, 580 U.S.—, 137 S. Ct. 759, 773, 197 L. Ed. 2d 1 (2017) (citing *Miller-El*, 537 U.S. at 327).  The petitioner here cannot make that showing.  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of  Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.     That the petition for writ of habeas corpus (ECF No. 1) be **DENIED**.

Case No.:  3:19cv1654/LAC/EMT

2.    That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 22nd day of December 2020.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation.  Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.  An objecting party must serve a copy of the objections on all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.